# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| DELORES QUINN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03 C 3600 |
| ) | |
| RENEE HARDIMON, TONIA ) | |
| SAPPINGTON, LILLIAN WARDLOW, ) | |
| and ROSEMARY JACKSON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Delores Quinn, a *pro se* plaintiff, has sued a number of individuals and governmental agencies under 42 U.S.C. § 1983 for violating her constitutional rights. The defendants have moved for summary judgment, arguing that Ms. Quinn's claims are barred by the applicable two-year statute of limitations. For the following reasons, the Court grants the motion.

As recounted in a previous ruling in this case by Judge Joan Lefkow, Ms. Quinn alleges that the defendants violated her constitutional rights while she was detained at the Cook County Jail following her arrest on a child abuse charge. *See Quinn v. Harris*, No. 03 C 3600, 2004 WL 1244025, *1 (N.D. Ill. June 7, 2004). The criminal charges against Ms. Quinn were eventually dropped. Ms. Quinn originally sued two other defendants, Venessa Harris and Teddy Williams, for false arrest, but Judge Lefkow dismissed those claims. *Id.* at *2. Ms. Quinn claims that the remaining defendants, who are correctional officers at the jail, subjected her to a humiliating strip search and incarcerated her without adequate food or medical assistance from December 18-20,

2000.[1]

Summary judgment is appropriate if the evidence presented "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The Court reviews the facts and draws all reasonable inferences in favor of the non-moving party. *Van Diest Supply Co. v. Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005). It is not enough for the non-moving party to rest on the allegations or denials contained in the pleadings. *Id.* To defeat a motion for summary judgment, the party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.,* 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted).

As an initial matter, the Court notes that the defendants' motion for summary judgment did not strictly comply with Local Rule 56.2, which requires a "party moving for summary judgment against a party proceeding *pro se*" to serve the *pro se* party with a particular notice describing her burden in defending a summary judgment motion. Instead of providing Ms. Quinn the particular notice found in the Local Rules, the defendants used a disclosure that their counsel evidently prepared based on the requirements described by the Seventh Circuit in *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). Though defendants' notice is somewhat less clear and complete than the notice required by Local Rule 56.2, it did explain the importance of providing the Court with documentary evidence to support her case: "Unless you answer the Motion with deposition transcripts, affidavits or documentary evidence, or both, only the Defendants'

---

[1] Judge Lefkow previously denied Ms. Quinn's motion to appoint counsel, and Ms. Quinn did not renew the request after the case was transferred to this Court's docket.

evidence will be before the Court. Failure to respond would be equivalent to failing to present any evidence in your favor at a trial." Defendants also provided Ms. Quinn with a copy of Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1.

The Court is disappointed that the defendants' attorneys, who undeniably have experience defending *pro se* lawsuits in federal court, have not complied with Local Rule 56.2. Nonetheless, the notice defendants provided sufficiently described what Ms. Quinn was required to do in response that their noncompliance with the Local Rule does not require denial of their motion. In any event, to ensure that Ms. Quinn is not unfairly prejudiced by her failure to respond to defendants' Local Rule 56.1 statement, the Court has examined the record in detail, to determine whether it contains evidence that could possibly create a genuine issue of material fact. *See Black v. Safer Found.*, 02 C 2751, 2003 WL 21823483, *1 n.1 (N.D. Ill. Aug. 6, 2003); *United States v. Reed*, 01 C 6535, 2003 WL 548381, at *1 n.1 (N.D. Ill. Feb. 25, 2003); *Schafer v. Querry & Harrow, Ltd.,* No. 01 C 3908, 2002 WL 360651, *2 n.1 (N.D. Ill. March 7, 2002).

The defendants offer a single argument in support of their motion for summary judgment: that the relevant statute of limitations bars Ms. Quinn's complaint.[2] In this § 1983 action, the Court borrows the forum state's statute of limitations for personal injury claims. *Mitchell v. Donchin*, 286 F.3d 447, 450 n. 1 (7th Cir. 2002); *Ashafa v. City of Chicago,* 146 F.3d 459, 461 (7th Cir. 1998); *Lucien v. Jockish,* 133 F.3d 464, 466 (7th Cir. 1998). In Illinois, that time period is two years. 735 ILCS 5/13-202. Claims under § 1983 "accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Kelly v. City of Chicago,* 4

---

[2] The Court notes that the defendants refer to unpublished Seventh Circuit opinions in their opening brief. Under Seventh Circuit Rule 53, unpublished opinions may not be cited or used in any federal court within the circuit.

F.3d 509, 511 (7th Cir.1993). Ms. Quinn was released from jail on December 20, 2000; there is no question that she knew of the alleged violations by then. Despite this, she waited more than two years, until May 2003 to file her complaint. For this reason, her claims are time-barred unless she offers evidence from which a reasonable jury could find that the statute of limitations should be tolled. *See Smith v. City of Chicago Heights*, 951 F.2d 834, 840 (7th Cir. 1992) (citing *Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000, 1004 (7th Cir. 1984) ("'[T]he federal doctrine of equitable tolling is available,' in addition to state tolling rules, when a federal court borrows a state statute of limitations.")).

Under federal law, equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Id.* at 839. "[M]ental illness tolls a statute of limitations only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." *Miller v. Runyon*, 77 F.3d 189, 191-92 (7th Cir. 1996) (emphasis in original). The doctrine is properly invoked where "plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion." *Zerelli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003).

In *Miller*, the plaintiff, a former postal worker, sued the Post Office for firing him because of a disability – namely, bipolar disorder (sometimes referred to as "manic depression") – in violation of the Rehabilitation Act, 29 U.S.C. § 791. *Miller*, 77 F.3d at 191. Under applicable federal regulations, the plaintiff had thirty days from the time of his termination to bring an administrative complaint, but he waited three years. *Id.* He argued that because of his mental illness, he was entitled to the benefit of equitable tolling. *Id.* at 192. The court disagreed.

4

*Id.* It noted that a plaintiff's mental illness does not always toll a statute of limitations because not all such illnesses are debilitating, and many individuals suffering from them are perfectly capable of understanding their legal rights. *Id.* The court noted that the plaintiff attended Chicago State University for two semesters after his termination and concluded that if he could attend school, "he could complain to an equal employment opportunity counselor." *Id.*

Ms. Quinn contends that she suffered from post-traumatic stress disorder (PTSD) after her release from jail and was, as a result, unable to file her complaint in a timely manner. As indicated above, however, the fact that a plaintiff suffered from a psychiatric disorder is not enough to entitle her to equitable tolling. Rather, Ms. Quinn must also offer evidence that she was incapable of managing her affairs during the period in question. The Court has reviewed the entire record in this case, paying particular attention to the deposition testimony of Ms. Quinn and her physician, Dr. Swanson. We have found no evidence that Ms. Quinn was incapable of managing her affairs. Though Ms. Quinn's and Dr. Swanson's testimony undeniably reflects that she suffered symptoms of depression and PTSD during the relevant period, the testimony is in no way indicative of an inability on Ms. Quinn's part to manage her affairs. Specifically, Ms. Quinn described her symptoms as including stress, frequent crying, headaches, restlessness, insomnia, feelings of uselessness and emptiness, anger, inability to laugh, and feeling suicidal, *see* Quinn Dep. at 66, 251, 260-61, 361, 389, 390, *not* as involving an inability to manage her affairs. Indeed, Ms. Quinn admitted the following in her deposition:

1. From January- May 2001, she participated in her criminal case by attending court on a monthly basis and communicating with her lawyer and witnesses. Quinn Dep. at 36, 40.

2. From December 2000 - May 2002, while living with her partner, Vaughn Lowe,

5

> she paid for living expenses, cooked, did general housecleaning, and took care of general maintenance of the home. *Id.* at 29-30.

3. In January 2002, when Lowe became ill with cancer, she drove him to doctor's appointments, cared for him, and cleaned his clothes, all while running the affairs of the household. *Id.* at 31-32.

4. In 2001, she approached several religious and political leaders to discuss what she perceived to be her wrongful arrest. Those individuals included Fr. Michael Pfleger, Fred Hampton Jr., Bishop Jackson, and the Cook County Board of Commissioners. *Id.* at 41, 44-45.

5. In 2001, she spoke with at least three attorneys about her incarceration, but none of them were willing to file a lawsuit on her behalf. *Id.* at 62-64.

6. At some time in early 2002, she spoke with an attorney for her nursing assistant union about her termination from Bellhaven Nursing Home several years prior. *Id.* at 78-79.

7. From May - September 2002, she returned to work as a full-time nursing assistant at Bellhaven. *Id.* at 72-75.

8. In September 2002, she filed a union grievance soon after she was terminated from her job. *Id.* at 79.

9. The only reasons she did not file a lawsuit in this case earlier than she did is because she did not have any money. *Id.* at 72.

Ms. Quinn's substantial activities during the statute of limitations period – like the *Miller* plaintiff's attendance at college – prevents her from invoking the doctrine of equitable tolling. Given this evidence, no jury reasonably could find that her mental state prevented her from filing a lawsuit.

The Court recognizes that under § 1983, Ms. Quinn may invoke both federal and state tolling mechanisms to avoid a statute of limitations bar. *See Smith*, 951 F.2d at 840. Illinois law, however, is at least as restrictive as federal law when it comes to tolling statutes of limitations because of mental illness. 735 ILCS 5/13-211. It requires a plaintiff to prove an actual "legal

disability," which means "he or she is 'entirely without understanding or capacity to make or communicate decisions regarding his [or her] person and totally unable to manage his estate or financial affairs.'" *Basham v. Hunt*, 332 Ill. App. 3d 980, 988, 773 N.E.2d 1213, 1221 (2002) (quoting *Hochbaum v. Casiano*, 292 Ill. App. 3d 589, 595, 686 N.E.2d 626, 631 (1997)); *see also Peach v. Peach*, 73 Ill. App. 2d 72, 83, 218 N.E.2d 504, 509 (1966). As evidenced by Ms. Quinn's admitted activity during the statute of limitations period, no jury reasonably could find that she suffered from a legal disability as defined by Illinois law.

Finally, the Court notes that Ms. Quinn gave testimony suggesting that she was advised, perhaps by counsel, that she could not file suit until her name was cleared in the underlying criminal case, and because she filed suit within two years of the dismissal of the criminal charges, the suit was timely. *See* Quinn Dep. at 161. Though what Ms. Quinn suggests she was told may well have been true for false arrest claims (which Judge Lefkow previously dismissed on other grounds), it is not the case for her claims of mistreatment while incarcerated. Those claims accrued, and the two year statute of limitations period started running, no later than Ms. Quinn's release from the Cook County Jail on December 20, 2000. *See Perez v. Sifel*, 57 F.3d 503, 505 (7th Cir. 1995) (holding that cause of action under § 1983 for improper search accrues at time of the search); *Diaz v. Shallbetter*, 984 F.2d 850, 855 (7th Cir. 1993) (recognizing that claims under § 1983 generally accrue when the injury is inflicted); *but cf. Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (holding that § 1983 action that calls into question the validity of a conviction accrues upon termination of underlying criminal proceeding in plaintiff's favor).

**Conclusion**

For the foregoing reasons, the Court grants defendants' motion for summary judgment [docket no. 84]. The Clerk is directed to enter judgment in favor of the defendants.

/s/ Matthew F. Kennelly<br>
MATTHEW F. KENNELLY<br>
United States District Court

Date: February 3, 2006